J-A10041-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| BARBARA J. LINDE, INDIVIDUALLY AND AS PARTNERS OF C.W.E.R.S.F., AND GOLF HILL FARMS | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : | |
| v. | : : | |
| | : : | No. 1717 EDA 2024 |
| ERIC R. LINDE, MARY ANNE LINDE, GARY LINDE, EKG PARTNERSHIP, LINDE FAMILY PARTNERSHIP, LINDE FAMILY LIMITE PARTNERSHIP, C.W.E.R.S.F., AND SCOTT F. LINDE | : : : : : : | |

Appeal from the Order Entered June 12, 2024
In the Court of Common Pleas of Wayne County
Civil Division at No(s): 2021-00209

BEFORE:   PANELLA, P.J.E., BECK, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED JULY 7, 2025**

Barbara J. Linde, individually and as a partner of both C.W.E.R.S.F. and Golf Hill Farms ("Appellant"), appeals from the order that provided finality to all declaratory judgment claims contained at count one of her amended complaint, manifested by judgments in favor of her brothers, appellees Eric R. Linde and Scott F. Linde, and against Appellant.[1] On appeal, Appellant

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The appealed-from June 12, 2024 order grants Scott F. Linde's motion for judgment on the pleadings and enters judgment in his favor and against Appellant on count one of the amended complaint. An earlier, November 7, 2023 order enters judgment in favor of Eric. R. Linde and against Appellant
*(Footnote Continued Next Page)*

asserts that the trial court erroneously entered judgment on the pleadings, specifically contending that the court committed errors of law in its application of both the relevant statute of limitations and legal doctrine of collateral estoppel. We affirm.

This matter involves the transference of certain partnership interests between siblings Eric R. Linde and Scott F. Linde. In summary, following the sustaining of preliminary objections, Appellant filed an amended complaint that added Scott F. Linde, as an indispensable party, to count one of her complaint. That count, asserted exclusively against the two brothers,[2] was an "action in declaratory judgment and equity to declare the transfers of . . . Scott Linde's ownership interests in [C.W.E.R.S.F.] and Golf Hill Farms void *ab initio* and enjoin further action." **See** Amended Complaint at 13 (formatting altered).

_____

on count one of the amended complaint. In this Court, Eric R. Linde has filed a motion to quash this appeal because it was untimely filed where Appellant allegedly should have appealed from the trial court's 2023 order. **See** Motion to Quash Appellant's Appeal, 7/17/24, at ¶¶ 25-26 (claiming that the 2023 granting of judgment on the pleadings "dismissed" him from that count and, as an indispensable party to that cause of action, resulted in complete termination of that claim regardless of Scott F. Linde's subsequent filings). This Court originally denied his motion without prejudice for him to renew his claim in his brief. Given our affirmance of the trial court's order, to the extent that he has now raised this claim for a second time, **see** Eric R. Linde's Brief at 9-15, we deny his motion as moot.

[2] Although the amended complaint's count one was solely asserted against Eric R. Linde and Scott F. Linde, Eric's counsel represented all other "defendant" parties before the trial court that were not Scott F. Linde (the former of which are referred to hereinafter as "Eric Linde, et al.").

- 2 -

Thereafter, Eric Linde, et al., filed preliminary objections to the amended complaint, which were overruled. Ultimately, Eric Linde, et al., filed an answer and new matter raising the affirmative defenses of *res judicata*, collateral estoppel, and statute of limitations.

> On September 22, 2023, after pleadings had closed between [Appellant] and Eric Linde, et al., Eric Linde, et al.[,] filed a motion for judgment on the pleadings. At this point in the proceedings, Scott Linde had not yet filed a responsive pleading to the [a]mended [c]omplaint and counsel had not entered [an] appearance on his behalf. [The trial c]ourt issued a scheduling order for argument on the motion. On October 2, 2023, Scott Linde, by and through [counsel], filed an [a]nswer and [c]ross-[c]laim against Eric Linde, et al. [The trial c]ourt heard argument on the motion for judgment on the pleadings on November 1, 2023. On November 7, 2023, [the trial c]ourt issued an [o]pinion and [o]rder granting the motion in part and entering judgment in favor of Eric Linde as to Count 1. It was noted in [the trial c]ourt's [o]pinion that Scott Linde did not join in the motion. At no time prior to the instant appeal did [Appellant] appeal or request permission to appeal the November 7, 2023 [o]rder.
>
> On April 19, 2024, Scott Linde filed a motion for judgment on the pleadings. On May 6, 2024, Eric Linde, et al.[,] filed a motion to strike Scott Linde's motion, arguing that [the trial c]ourt's November 7, 2023 [o]rder effectively dismissed Count 1 against Scott Linde. Upon consideration of briefs and after argument on both the motion for judgment on the pleadings and the motion to dismiss, [the trial c]ourt by [o]rder dated June 12, 2024: (1) [d]enied Eric Linde, et al.'s[,] motion to strike; (2) [g]ranted Scott Linde's motion and entered judgment in favor of Scott Linde as to Count 1; and (3) [d]ismissed Scott Linde's [c]ross-[c]laims and dismissed Scott Linde as a party to the action.

Trial Court Opinion, 7/17/24, at 2-3. Substantively, in this most recent round of litigation involving Scott F. Linde, the court wholly relied upon its earlier, November 7, 2023 order, which found that Appellant's count one was

- 3 -

"barred," *id.* at 3, notwithstanding the 2023 order's language only entering judgment in favor of Eric R. Linde. *See* Order and Opinion, 11/7/23, at 8.

Appellant timely appealed from the court's order granting Scott F. Linde's motion for judgment on the pleadings and entering judgment in his favor and against Appellant on her amended complaint's count one.[3] Appellant

---

[3] We note that the appealability of this order, to the extent it is both final and appealable, has not been extensively briefed by any of the parties. *But see* Appellant's Brief, at 2 (stating that this Court has jurisdiction pursuant to Pa.R.A.P. 341 and 42 Pa.C.S. § 742 without any further elaboration). To that point, Appellant's complaint contains seven additional counts beyond the discrete count that the trial court ruled upon. Nevertheless, an order may be "made final or appealable by statute or general rule, even though the order does not dispose of all claims and of all parties." Pa.R.A.P. 311(a)(8). Under the Declaratory Judgment Act,

> Courts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect, and such declarations shall have the force and effect of a final judgment or decree.

42 Pa.C.S. § 7532. While Section 7532 indicates that a declaratory judgment "shall have the force and effect of a final judgment or decree," such an adjudication "does not become appealable merely because it is cast in the form of a declaratory judgment." *Bolmgren v. State Farm Fire and Cas. Co.*, 758 A.2d 689, 691 (Pa. Super. 2000). Instead, "it is the nature of the order at issue that dictates whether it is final and appealable." *Id.* at 691 n.1. Specifically, our Supreme Court has directed appellate courts to inquire into "(1) what is the effect of the [trial] court's decision on the scope of the litigation; and (2) what practical effect does the [trial] court's decision have on the ultimate outcome of the case." *Pennsylvania Manufacturers' Assoc. Insur. Co. v. Johnson Matthey, Inc.*, 188 A.3d 396, 399 (Pa. 2018) (*per curiam*), *citing United States Orgs. for Bankruptcy Alternatives, Inc. v. Department of Banking*, 26 A.3d 474, 479 (Pa. 2011). Since we conclude

*(Footnote Continued Next Page)*

thereafter complied with her obligations pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), and now, on appeal, presents two questions for this Court's review:

1. Did the trial court err as a matter of law in entering judgment on the pleadings as to count one to declare Scott F. Linde's transfers of his partnership interest without Appellant's written consent void on the grounds of the running of the four-year statute of limitations when an "actual controversy" did not arise until the partnership interests were actually transferred, which did not occur until June 15, 2020, and this action was initiated within one year of this date?

2. Did the trial court err as a matter of law in entering judgment on the pleadings on the grounds of collateral estoppel when the issue in this action is whether the Appellant's written consent is required, under written partnership agreements, for the transfer of Scott F. Linde's partnership interests to be valid, while the issue in the prior action was whether one of the parties breached a separate settlement by failing to notify another partner of the partnership transfers, the Appellant was not a party to or in privity with a party in the prior action, the Appellant did not have any opportunity to litigate the subject issue in the prior action, and the validity of Scott F. Linde's transfers of his partnership interests without the Appellant's consent had no impact on the judgment in the prior action?

**See** Appellant's Brief, at 7.

The scope of our analysis of a trial court's ruling on a motion for judgment on the pleadings is well-settled:

> The standard by which a court reviews a request for judgment on the pleadings is limited. A motion for judgment on the pleadings

---

that the order does not "merely narrow[] the scope of litigation," **Pennsylvania Manufacturers'**, 188 A.3d at 400, but provides inherent applicability to all other claims asserted in the amended complaint, we find the declaratory judgment order to be final and appealable.

will be granted only where, on the facts averred, the law says with certainty no recovery is possible. As this issue concerns a question of law, our review of the entry of judgment on the pleadings is *de novo*.

***Piehl v. City of Philadelphia***, 987 A.2d 146, 154 (Pa. 2009) (citations omitted).

In addressing her first issue, we first note that a declaratory judgment action, such as the one in the present matter, has a four-year statute of limitations. ***See Wagner v. Apollo Gas Co.***, 582 A.2d 364, 327 (Pa. Super. 1990); ***see also*** 42 Pa.C.S. § 5525(8). For this type of action, "a plaintiff must demonstrate an 'actual controversy' indicating imminent and inevitable litigation, and a direct, substantial and present interest." ***Wagner***, 582 A.2d at 327 (citation omitted).

The trial court found Appellant's count one to be barred by the applicable four-year statute of limitations:

> To settle a shareholder derivative action involving the parties that commenced in 1999, Scott and Eric Linde entered into a settlement agreement in 2014 ("Settlement Agreement").[4] The Settlement Agreement provided that Scott Linde convey his forty-two and one-half (42.5) [percent] partnership interest in C.W.E.R.S.F. and forty-two and one-half (42.5) [percent] partnership interest in Golf Hill Farms [] to Eric Linde. A copy of the handwritten settlement agreement [was] attached to [Eric Linde et al.'s,] [a]nswer and [n]ew [m]atter as [e]xhibit 5.
>
> [Eric Linde et al.] argue[s] that [Appellant] is barred from challenging the transfers by the four-year statute of limitations

---

[4] The agreement, attached as "Exhibit F" to the amended complaint, is in handwritten cursive, rendering it difficult to read.

because [Appellant] was aware of the Settlement Agreement in 2015. In paragraph 31 of [Eric Linde et al.'s] new matter, it is stated that the Settlement Agreement was attached to an email dated April 6, 2015[,] and received by [Appellant] on that date. The copy of the email is included in [e]xhibit 5 of [Eric Linde et al.'s] answer and new matter. It reflects [Appellant] as a recipient of the email. In her reply to [Eric Linde et al.'s] new matter, [Appellant] admits in part and denies in part paragraph 31. [Appellant] admits that the Settlement Agreement was attached to said email, but denies any implications that when [Appellant] received a copy of the Settlement Agreement[, it] ha[d] any bearing on [her] claims, as [Appellant] is not challenging the validity of the Settlement Agreement, but rather is challenging the validity of the purported transfers – which did not occur until June 2020.

. . . [However, t]he transfers occurred *due to the Settlement Agreement*. . . .

[Appellant's] opportunity to challenge the transfers first arose in 2015, at the latest, when she undisputedly received a copy of the Settlement Agreement via email. [Appellant] could have sought a declaration that the Settlement Agreement was unenforceable. [Appellant] argues that challenging the transfers because they were done without her consent is separate and distinct from challenging the Settlement Agreement, entered into without her consent, that effectuated the transfers. . . . [Nevertheless, t]he validity of the Settlement Agreement and the validity of the transfers provided for therein are not mutually exclusive. In 2015, [Appellant] became aware that Scott Linde agreed to transfer his partnership interests with [Appellant's] consent and memorialized the same in an agreement. This [action] was the "actual controversy." Therefore, [Appellant] had until 2019 to challenge the proposed transfers.

Order and Opinion, 11/7/23, at 3-5 (emphasis added).

Although Appellant acknowledges that she received the settlement agreement in 2015, she claims that the court erred in its application of the statute of limitations because Scott F. Linde's June 15, 2020 "actual transfers" of his partnership interests without her written consent were void, thereby

- 7 -

creating the "actual controversy" for statute of limitations purposes. Appellant's Brief, at 28.[5] In addition, when she received the settlement agreement in 2015, "its validity was already called into question as a result of the litigation between Eric and Scott in which Scott asked the trial court to find that the entire [s]ettlement was void because of Eric's numerous alleged breaches of it." *Id.*

As summarized by Appellant, her amended complaint, at count one, seeks four declarations:

> First, it seeks a declaration that the purported transfers of Scott's partnership interests in C.W.E.R.S.F. and Golf Hill Farms are void pursuant to the written partnership agreements because [Appellant] never gave her written consent to the transfers. Then, it seeks three declarations based on the presumption that Scott's purported transfers of his partnership interests to Eric are void: (1) that Scott remains a 42.5% partner in C.W.E.R.S.F. and Golf Hill Farms, (2) that Eric also remains a 42.5% partner in C.W.E.R.S.F. and Golf Hill Farms, and (3) that the actions taken by Eric as "managing partner" or "majority partner" of C.W.E.R.S.F. and/or Golf Hill Farms are void.

*Id.* at 32 (record citations omitted).

Appellant claims that "[a]n actual controversy did not arise with respect to the first three requested declarations – regarding the validity of the transfers and the percentages of Scott and Eric's ownership interests in the partnerships – until Scott actually purported to transfer his partnership interests to Eric without [Appellant's] written consent." *Id.* Those transfers

_____

[5] Appellant filed the present lawsuit in 2021.

occurred on June 15, 2020, when the court issued an order "releasing the documents Scott signed to transfer his partnership interests from escrow." *Id.* (record citations omitted). In addition, "[a]n actual controversy did not arise with respect to the last requested declaration until Eric started taking the actions complained of as 'managing partner' or 'majority partner,' which began on June 24, 2020[.]" *Id.*

Appellant contends that she could not have sought resolution of her claims in 2015, by way of declaratory judgment in finding the settlement agreement void, because "the transfers had not occurred at that point[.]" *Id.* at 33. Moreover, Appellant "could not have sued Eric to declare certain actions that Eric took following the transfers invalid until after Eric took these actions, which did not begin to occur until June 24, 2020." *Id.* In effect, according to Appellant, the trial court "conflated" the settlement's provision requiring Scott F. Linde to transfer his partnership interests with the actual transfer of those interests without Appellant's consent. *Id.* Appellant believes that the settlement agreement, itself, "did not create an actual controversy because Scott agreeing to transfer his partnership interests to Eric R. Linde is not *per se* void under the partnership agreements." *Id.* at 34. Instead, the partnership agreements "permit one partner to transfer his or her partnership interest to a third party – as long as the other partners consent, in writing." *Id.* Thus, Scott F. Linde and/or Eric R. Linde could have attempted to obtain Appellant's written acquiescence to the transfer without violating their partnership

agreements. Stated differently, although the 2014 settlement agreement established that partnership interest transfers from Scott F. Linde to Eric R. Linde were to occur, Appellant "could have consented to the transfers up until the time they occurred[.]" *Id.* As such, there was no "actual controversy" until those actions transpired. Moreover, Appellant references litigation between Eric R. Linde and Scott F. Linde, which could have apparently resulted in the same, challenged settlement agreement being declared void, providing further evidence as to why she filed this current action when she did. *See id.* at 35.

After our review, as we can best discern from the settlement agreement, it unequivocally establishes, *inter alia*, that Scott F. Linde is to convey his partnership interests to Eric R. Linde on the "settlement date[.]" Amended Complaint, Exhibit F at 1. Therefore, notwithstanding the provisions in any existing partnership agreement, under the settlement agreement's language, this transfer of interests *will* occur irrespective of any purported necessary assent by Appellant. As such, we agree with the trial court that the execution of the document, itself, set into motion an "actual controversy," *Wagner*, 582 A.2d at 327, as its enforceability was not contingent. Simply put, the definite language contained in the agreement provides inevitability to the transaction, establishing "imminent and inevitable litigation, and [created the condition wherein Appellant had] a direct, substantial[,] and present interest." *Id.* When Appellant received a copy of the agreement in 2015, she received notice of the partnership interests transfer; that her agreement to such a transfer had

not occurred was immaterial to the transfer actually taking place in accordance with the settlement agreement. In other words, the settlement agreement was immediately enforceable since it was not contingent.

Other than providing background into the "actual controversy" standard in declaratory judgment cases, Appellant has provided no other authority to demonstrate any error in the trial court's determination that the settlement agreement's consummation provided the genesis of the present controversy between the parties in a way that was legally actionable, i.e., the start of the running of the statute of limitations. Absent a showing that the actual transfer of the partnership interests—rather than the document directing the same—created the controversy, we conclude that the trial court did not err as a matter of law when it entered an order granting judgment on the pleadings against Appellant at count one of her amended complaint.[6]

Order affirmed. Motion to quash denied as moot.

_____

[6] As we find that the trial court did not err as a matter of law in entering judgment on the pleadings relating to the applicability of the statute of limitations, it is unnecessary to discuss Appellant's second issue, contesting the court's application of collateral estoppel.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>7/7/2025</u>